```
                  UNITED STATES DISTRICT COURT
                    DISTRICT OF CONNECTICUT
```

```
CLYDE MEIKLE,                  :
                               :
     Petitioner,               :
                               :      PRISONER CASE NO.
V.                             :      3:05-CV-742 (RNC)
                               :
JAMES DZURENDA,                :
                               :
     Respondent.               :
```

RULING AND ORDER

Petitioner, a Connecticut inmate proceeding pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 vacating his conviction. He claims that the trial court erred in rejecting his challenge to the prosecutor's peremptory strike of a jury panelist under <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986). He also claims that his counsel, who represented him at trial and on appeal, was ineffective for failing to demonstrate that the prosecutor's exercise of the strike was unlawful under a dual motivation analysis. In prior state court proceedings, both claims were rejected on the merits. To obtain relief from his conviction, petitioner must show that the state courts unreasonably applied clearly established federal law. <u>See</u> 28 U.S.C. § 2254(d)(1). He has not made this showing.

I.   <u>Background</u>

In 1998, a Connecticut Superior Court jury convicted petitioner of murder and he was sentenced to prison for fifty years. Petitioner, who is African-American, claims that the

prosecutor used a peremptory strike to remove an African-American female from the jury pool in violation of the Fourteenth Amendment. In Batson, the Supreme Court held that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant."  476 U.S. at 89.

The relevant facts are as follows.  Early in the voir dire process, the panelist was questioned individually by counsel in the presence of the court.  She provided some information concerning her involvement as the complainant in a criminal case approximately one year earlier.  The case arose from an incident at a restaurant in Manchester, Connecticut, involving the panelist and another patron of the restaurant, who was white.  The incident was triggered by the white patron's request that the panelist, who was sitting alone at a booth waiting for a take-out order, relinquish the booth to him and his family so they could sit down and eat. The panelist was offended and a confrontation ensued that led to the white patron's arrest and conviction.  The panelist indicated that she was satisfied with the way her complaint had been handled.

After the panelist was excused from the courtroom, the prosecutor said she knew about the Manchester case and the panelist was "not telling [them] the whole story."  (Voir Dire Tr. 241:6, March 5, 1998)  The prosecutor explained that she was involved in the Manchester case at the outset in that she was the prosecutor

2

who determined that the police had probable cause for an arrest. She had no further involvement in the case but heard from others that the panelist was "very vehement in her fight to see that . . . the defendant got prosecuted." Id. at 240:5-6.  She added that when the defendant applied for accelerated rehabilitation, the panelist threatened to sue everyone involved, including the State.

The court inquired whether the prosecutor was exercising a peremptory challenge or asking that the panelist be excused for cause.  The prosecutor replied that rather than pursue a challenge for cause, she would simply exercise a peremptory strike.  The trial court asked petitioner's counsel if he was going to raise a Batson challenge.  Petitioner's counsel said yes.  The prosecutor responded, "It has absolutely nothing to do with her race." Id. at 245:9-10.

The trial court asked petitioner's counsel to state the basis for his claim that the strike was racially motivated.  Petitioner's counsel identified no reason but added that further unspecified proceedings would be necessary to determine whether the reason given by the prosecutor was "race-neutral," by which he appears to have meant "not pretextual."[1]  The trial court then called on the prosecutor to state her position.  Referring to the Manchester case in which the panelist was the complainant, the prosecutor stated,

---

[1] Petitioner's counsel stated, "In order for the court to determine whether or not that is, in fact, a race neutral reason, I think that the court would need to do more than that, otherwise it could be simply pretextual." (Tr. 247:20-23)

3

"[A]t every step . . . she was very emotional, she was very irrational, she would not listen on a rational basis.  The police explained to her what was going on.  It was explained to her what the charges were.  It was a very emotional, a very visceral response to everything and it was extremely difficult for the police and the state to get pas[t] that."  Id. at 248:15-22.  The prosecutor added, "I don't want any person on the jury who is going to be irrational about something[.]"  Id. at 248:24-25.  The prosecutor also gave three other race-neutral reasons for removing the panelist: (1) the prosecutor was concerned that the panelist was confused during voir dire about a juror's obligation to apply the law to the facts; (2) the panelist had said she had a problem sitting in judgment of others; and (3) the panelist had hesitated a long time before responding to the prosecutor's question whether she could be fair and impartial.

   After listening to further argument, the court stated, "I want to think about this overnight as to whether or not there should be further questioning [of the panelist] tomorrow."  Id. at 258:14-16. The court ordered the panelist to return to court the next morning in case additional questioning proved necessary.  Before adjourning for the day, the court summarized the four reasons that had been stated by the prosecutor for removing the panelist and asked petitioner's counsel to be prepared to comment on them, especially the one relating to the Manchester case.

4

The next morning, the prosecutor reiterated that race had nothing to do with any of her reasons for removing the panelist. Petitioner's counsel responded that "the primary thrust" (Voir Dire Tr. 269:26, March 6, 1998) of the prosecutor's position was based on second hand information about the panelist's behavior in connection with the Manchester case. Id. at 269:3. He stated that "if [the] court [was] going to accept that," id. at 269:21-22, it would be necessary "to find out in a more first hand and . . . direct way what exactly took place [at] the restaurant." Id. at 269:23-26.

Following this exchange, the court issued an oral ruling. The court referred to the opinion in State v. Hinton, 227 Conn. 301, 325 (1993), which discusses a number of factors that may be considered in deciding whether a peremptory strike is racially motivated. The court observed that none of these factors was present. The court then reviewed the reasons given by the prosecutor for removing the panelist. The court found that the panelist's hesitancy in responding to the prosecutor's question whether she could be fair and impartial could have been a "red flag" and "certainly [did not] implicate racial bias." Id. at 272:2. The same was true of her statements "relative to judging people," id. at 272:4-5, and her comments regarding a juror's duty to apply the law. Id. at 272:18-19. Continuing with its bench ruling, the court stated,

> [A]ll of those things together support the conclusion of the court that the defendant has not established purposeful discrimination by a preponderance of the evidence in this matter.

Id. at 272:21-24.

Referring to the Manchester case, the court immediately added,

> I did neglect to mention the other out-of-court knowledge that this prosecutor ha[s], whatever its source, relating to the Manchester arrest of some other individual.

Id. at 272:24-273:1.

The court then continued,

> I think for all those reasons, this court does not have to hold a trial in a trial on the question of what happened in the LaStrada Restaurant in Manchester at that day at that time.

Id. at 273:2-5.

The court concluded,

> [T]here isn't a claim here that the court should strike for cause.  This, again, is a peremptory challenge and I believe it's within the ambit of the rulings in [state court] cases . . . and other cases, including [Batson].
>
> Accordingly, the court will excuse [the panelist] on the peremptory challenge of the state.

Id. at 273:9-18.

Petitioner appealed his conviction, arguing that the trial court erred in its Batson ruling by failing to explicitly state whether the prosecutor's reliance on the panelist's behavior in connection with the Manchester case was pretextual.  Petitioner cited a Connecticut Supreme Court case, decided soon after his

6

trial ended, adopting the Second Circuit's dual motivation analysis for Batson claims.[2]  The Appellate Court rejected his argument and affirmed the conviction.  The Connecticut Supreme Court denied review.

Petitioner filed a state habeas petition, arguing that his counsel was ineffective at trial and on appeal because he failed to adequately raise and argue a dual motivation Batson claim.  After an evidentiary hearing, the court denied the petition.  It found that the manner in which petitioner's counsel presented the Batson challenge was adequate. See Miekle v. Warden, No. CV 1447385 at 7 (Conn. Super. Ct. May 9, 2003)(Memorandum of Decision).  Petitioner raised the same argument on appeal from the habeas decision.  The Appellate Court denied relief, noting that the trial court considered all four reasons given by the prosecutor and found each of them to be race-neutral.  See Meikle v. Comm'r of Corr., 87 Conn. App. 490, 494 (2005).  The Connecticut Supreme Court denied review.  Petitioner then brought this case.

II.  Standard of Review

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), petitioner cannot obtain federal habeas relief unless he

---

[2] Under this analysis, a defendant who successfully demonstrates that a peremptory was exercised in part on the basis of race gains the benefit of a shift in the burden of persuasion. The party defending the strike must then persuade the court that the strike would have been exercised solely on the basis of the permissible reasons. See Howard v. Senkowski, 986 F.2d 24, 27-30 (2d Cir. 1993); State v. Hodge, 248 Conn. 207 (1999).

demonstrates that the decisions of the state courts "involve[] an unreasonable application of" clearly established federal law, as determined by the Supreme Court of the United States," or are "based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court." 28 U.S.C. § 2254(d)(1-2). In determining whether he has made this showing, the state courts' factual findings are presumed to be correct. § 2254(e)(1).

III. Discussion

A Batson challenge to a prosecutor's peremptory strike proceeds in three steps. The defendant must point to circumstances raising an inference that the strike is based on race. See 476 U.S. at 96. To rebut this prima facie showing, the prosecutor must offer a race-neutral explanation. The explanation is sufficient as long as it is not inherently discriminatory. At step three, the court must determine whether the defendant has carried his burden of proving purposeful discrimination. Rice v. Collins, 546 U.S. 333, 338 (2006). This step involves an evaluation of the prosecutor's credibility. See Synder v. Louisiana, 128 S. Ct. 1203, 1208 (2008). If the race-neutral explanation is based on the juror's demeanor, the court must consider "whether the juror's demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor." Id. Because a finding on the ultimate issue of intentional discrimination is a finding of fact based largely on evaluation of credibility, it may

be overturned only if it is clearly erroneous.  See United States v. Douglas, 525 F.3d 225, 239 (2d Cir. 2008).

Petitioner claims that the trial judge breached a duty under Batson by failing to make explicit, particularized findings regarding the prosecutor's reliance on her knowledge of the panelist's behavior in connection with the Manchester case as a reason for the strike.  He contends that the trial court was required to state whether this reason was race-neutral and, if so, whether it was credible.  The Appellate Court considered this claim on direct review and rejected it as factually unfounded, stating that the trial judge "examin[ed] each of the reasons [offered by the prosecutor]" and found each to be race neutral before ruling on the Batson challenge.  Meikle, 60 Conn. App. at 811.  Subsequently, in the course of considering petitioner's state habeas petition, the Appellate Court again noted that "[t]he trial court found that each of the four reasons asserted by the state in support of its decision to exercise a peremptory challenge were race neutral," 87 Conn. App. at 494, and "concluded that the petitioner had failed to demonstrate that the prosecutor's decision to strike the [panelist] reflected purposeful discrimination." Id. at 493-94.  Petitioner has not met his burden of demonstrating that the Appellate Court erred.

The Supreme Court has never held that a reviewing court should defer to a trial court's rejection of a Batson challenge only if the trial court made explicit, particularized findings with regard

9

to each of the reasons given by the prosecutor in support of the strike.  A trial judge has a duty at step three of the <u>Batson</u> procedure to explicitly adjudicate the credibility of the race-neutral explanation proffered for a strike.  <u>Jordan v. Lefevre</u>, 206 F.3d 196, 200 (2d Cir. 2000).  But a trial court "is not compelled to make intricate factual findings in connection with its ruling in order to comply with <u>Batson</u>.  As long as a trial judge affords the parties a reasonable opportunity to make their respective records, he may express his <u>Batson</u> ruling on the credibility of a proffered race-neutral explanation in the form of a clear rejection or acceptance of a <u>Batson</u> challenge."  <u>Messiah v. Duncan</u>, 435 F.3d 186, 198 (2d Cir. 2006)(internal citations omitted); <u>see also</u> <u>Galarza v. Keane</u>, 252 F.3d 630, 640 n.10 (2d Cir. 2001)(although judge must make rulings on each challenged strike, a general cumulative ruling or clear rejection of each claim is sufficient to constitute an adequate <u>Batson</u> decision).  In the absence of clearly established Supreme Court law requiring a trial court to make explicit, particularized findings as to each of the prosecutor's proffered reasons, the Appellate Court did not unreasonably apply <u>Batson</u> in determining that the trial court's bench ruling was sufficient.

Petitioner argues that the trial court was required to hold an evidentiary hearing.  Trial courts have discretion regarding the procedures to be used in considering a <u>Batson</u> challenge, including whether to hold evidentiary hearings, and may legitimately "decline

10

to conduct a mini-trial on the credibility of the prosecutor." Majid v. Portuondo, 428 F.3d 112, 127 (2d Cir. 2005)(quoting United States v. Jiminez, 983 F.2d 1020, 1024 (11th Cir. 1993)).  In this case, the trial judge heard extensive argument from both sides on the merits of the Batson challenge and gave both sides a reasonable opportunity to make their respective showings.  This lengthy process, conducted over two days, constituted a "meaningful inquiry."  See Jordan, 206 F.3d at 201.  The trial judge's decision that it was unnecessary to "hold a trial in a trial" on the circumstances of the restaurant incident was well within the court's discretion.  The issue for the judge to decide was whether the prosecutor had engaged in purposeful racial discrimination by striking the panelist.  The events at the restaurant were essentially irrelevant to this inquiry.

Petitioner argues that the trial court contravened clearly established federal law by failing to apply a dual motivation analysis.  The Supreme Court has expressly reserved the question whether mixed motivation analysis applies to Batson claims.  See Synder, 128 S. Ct. at 1212; cf. Rice, 546 U.S. at 341 (denial of Batson claim survives collateral attack although prosecutor's explanations included impermissible and permissible reasons).  Dual motivation analysis does not come into play unless the trial court determines that a strike is at least partly motivated by race-based considerations.  See, e.g., United States v. Taylor, 92 F.3d 1313, 1328 (2d Cir. 1996).  Petitioner's argument appears to be that

since the Manchester case had racial overtones, it necessarily follows that the prosecutor's strike was based in part on the panelist's race.  But the prosecutor's concern about the panelist's interaction with the police and prosecutors in the Manchester case, including her threat to sue everyone involved in the case, was race-neutral.  See United States v. Gibson, 105 F.3d 1229, 1232 (8th Cir. 1997)(prosecutor's peremptory strike based on juror's dissatisfaction with law enforcement officials' handling of criminal case clearly race-neutral).

Finally, petitioner advances a claim of ineffective assistance of counsel.  He relies entirely on his counsel's alleged failure to adequately develop and argue a claim that the prosecutor's explanation for the strike was motivated at least in part by racial discrimination.  Under AEDPA, petitioner cannot prevail on this claim unless he can show that the Connecticut courts applied Strickland v. Washington, 466 U.S. 668 (1984), in an "objectively unreasonable manner."  See Hemstreet v. Greiner, 491 F.3d 84, 89 (2d Cir. 2007).  In the state habeas proceedings, the courts concluded that petitioner's ineffective assistance claim failed under both prongs of Strickland.  Meikle, No. CV 1447385 at 7-8; Meikle, 87 Conn.App. at 492-93.  Petitioner has not demonstrated that their application of Strickland was objectively unreasonable.

III. <u>Conclusion</u>

Accordingly, the petition is hereby denied.

So ordered this 17th day of January 2009.

                                                /s/ RNC
                                       Robert N. Chatigny
                               United States District Judge